The fourth district appellate court of the state of Illinois has now convened. The Honorable James A. Kinect presiding. This case this morning is People v. Cornelius Freeman, 419-0486. Counsel for the appellate, would you please state your name for the record? Edward J. Wintrigue. And counsel for appellee, please state your name for the record. John Zimmerman. Thank you, gentlemen. You may proceed. Edward Wintrigue Your Honors, may it please the court, counsel. My name is Edward Wintrigue. I'm with the Office of the State Appellate Defender. I represent the appellate petitioner, Mr. Cornelius Freeman, on this appeal. In his brief, Mr. Freeman raised three points. First, the state did not provide sufficient evidence to sustain his conviction for second degree murder as it failed to prove beyond a reasonable doubt that he did not act in self-defense. Second, the circuit court reversibly erred in refusing to instruct the jurors on his involuntary manslaughter instructions. And third, the circuit court reversibly erred by violating Illinois Supreme Court Rule 431B during its admonishments during the jury selection process. Now, as the first and third points are relatively straightforward for this court to consider, I'm going to focus this morning on expounding my arguments for the second issue, which is the involuntary manslaughter claim. And absent any questions from the court, I'm going to stand on the briefing on the first and third points. So to reiterate in the second point, Mr. Freeman raised that the circuit court reversibly erred in refusing to instruct the potential, excuse me, the jurors on involuntary manslaughter and really in denying the jurors the opportunity to decide if Freeman acted only recklessly rather than intentionally or knowingly in causing Mr. White's death. To that end, a defendant is entitled to an instruction on the lesser-included offense if there's at least some evidence in the record that it believed by the jury was reduced the crime charge to the lesser offense. Now, it's important that some evidence need not be credible. And so it's imperative that the circuit court not render a credibility determination on either the defendant's testimony or for that matter, the state's witnesses as well in determining whether or not to give the lesser-included instruction. So under the circumstances here, this very low threshold nearly required some evidence from which it's possible that the jurors could rationally accept that Freeman acted only recklessly in causing Mr. White's death and did not intend to shoot Mr. White. That evidence before the circuit court reaches that very low threshold required for the giving of involuntary manslaughter instruction, taking Mr. Freeman's testimony first, he specifically denied that at any point he intended to kill or shoot a White or even really intentionally discharged the firearm. Explaining his testimony in a little bit more detail here, Mr. Freeman had a firearm that lacked a safety. He placed it in between his driver's seat where he was sitting and the center council of his vehicle when he arrived at the residence. Mr. White angrily left Ms. Bailey's residence and approached him via the passenger side door arriving at that door in an angry manner where he was muttering, cussing at him. After a verbal altercation, Mr. White attempted to reach inside the open window on the passenger side, unlock the door and enter. At that point, Freeman picked up the gun, placed it on his lap where he was pointed at the steering wheel. Undeterred, Mr. White again attempted to enter the vehicle a second time. And at this point, Mr. Freeman checked the locking system. He had automatic locks in his car, checked the locking system to ensure that the car was locked. At that point in his peripheral vision, he saw Mr. White launch at him through the open window. At that point, he turned and the gun discharged. So he denied that he carefully aimed or lined up a shot at Mr. White and instead described it more of a reaction, said the firearm's discharge was more of a reflex than intended or a deliberate act in response to a white who was charging at him. So his testimony established that he did not intend to discharge a firearm in that really an intended act. His testimony as a whole was corroborated by at least some other evidence in the record that was presented at trial. For instance, the position of Mr. White's injuries, he was shot near the top of the shoulder. The bullet entered down in a downward trajectory, transecting his body before settling in his lower, I believe, left back. That injury would be consistent with someone who is at least meaningful and into the vehicle, which would be consistent with Mr. Freeman's testimony. Also there was dirt scrubbed off the exterior of the passenger side door when the rest of the car was covered in it to remove the dirt or road grime from use. And that would be consistent with, again, someone making contact with the exterior door and at the window rather than, for instance, fleeing or backing away, which would be consistent with Mr. Freeman's testimony. Similarly, the positioning of the wound on Mr. White, there was only a single bullet wound and it was at the top of his right shoulder. From that distance would indicate that perhaps it was an accidental discharge rather than an intentional shot. He didn't hit him directly in the chest or in the head. So when are you going to get to the part where he gets out of the car and fires another shot in the direction of the victim? Yes, and Freeman did exit the vehicle, race to the rear of the vehicle, seeing Mr. White positioned down on the ground. He did fire a second shot, but it missed from a very close distance. So I'm a bad shot, so that means that I didn't really mean to do it? When you get out and shoot a second shot anywhere in the direction of the victim, doesn't that undercut the, well, it was just a reflex when I was in my car? I just respectfully disagree, Your Honor. I believe that actually further indicates that both shots were accidental discharges because they happened in a very similar scenario. In the first instance, he was seated in his car and there was a sudden movement at him and so that caused his non-intended discharge of the firearm. In the second instance, he didn't know where Mr. White was. He knew that he wasn't in the vehicle at least, but other than that, he did not know where he was and he'd be shooting back at him. He's racing as fast as he can to the back of the car and when he finally suddenly clears the rear of the vehicle, all of a sudden he sees Mr. White lying on the ground and with his hand on the trigger, it was that sudden appearance of Mr. White. It's just reasonable to believe that that caused his hand to contract on the trigger. Mr. Rittrig, what evidence do we have other than your client's testimony that he did not intend to shoot the victim? Yes, Your Honor. I believe that it would be some of the piece of evidence that I was mentioning earlier. For instance, the position of Mr. White's injuries, the fact that it was off-center and not directly hitting him in the chest or the head as he's leaning into the vehicle from a very close distance and the fact that he only shot once inside the vehicle when he made that first sudden appearance would indicate that he wasn't intending to actually discharge a firearm because he didn't follow up with any additional shots within the vehicle. And then as I explained before, the second shot happened in a very similar scenario where it was this sudden appearance or a sudden movement, or in this case sudden appearance by the decedent that caused a quick reaction. So is it your position that if you do something in reaction to something that has occurred, it's not intentional? Mr. Freeman was specifically asked whether or not he intended to discharge the firearm and he denied that he did when asked by the state. And so it is my position that doing something in more of a reflex or reaction rather than an intended deliberate act is non-intentional. But further, he specifically denied that he had an intent to fire the gun. And I think that position is corroborated, or excuse me, is supported by this court's decision in Peoples v. Beasley. That was a 2014 case where this court applied this very low threshold for involuntary manslaughter in a shooting that resulted in a second-degree murder conviction. In Beasley, the defendant, when confronted by a group of people that were purportedly menacing his relative, the Beasley defendant pulled out a gun, waved it around with his finger on the trigger in the direction of a group of people telling them not to move. When the decedent put on gloves and made a sudden movement towards his waistband, the Beasley defendant denied that he intended to fire the weapon that went off and said it was just a reaction. He specifically used the word reaction caused by his elevated fear and that confrontation. And this court found that that was evidence of recklessness and that could support involuntary manslaughter. And of course, this court said that the evidence supporting self-defense instruction was stronger, but nevertheless, this was warranted an involuntary manslaughter instruction for the jurors to resolve that issue. Counsel, I have a question. You've used the terminology accidental shooting a couple of times, but didn't your client testify that he pointed the gun at the window and intentionally fired it at the window? No, he intended to handle the gun. He intended to point it at the window. He admitted that in the cross-examination for the state, but he specifically denied that he had the intent to pull the trigger. Looking at his testimony specifically, I'm looking at the state's cross-examination on the R-587. The question was, well, you picked up the firearm and you pointed it and you fired it, right? And he answered, yes, I did. And then later the question was, when you did that, did you have the intent to do that? And he said, no, I did not. Excuse me, I did not have the intent to do just that. No, ma'am. Okay. And then he gets out of the vehicle and goes to the back and again, he didn't intend to fire the gun. It just went off. I mean, that's it? Yeah, yes. Yes, Your Honor. And I think it's actually reasonable to believe that in this very heightened situation where Mr. Freeman did not know where Mr. White was, believing that he had a gun and was going to be firing it, he gets out of the car, races towards the rear of the vehicle, and then all of a sudden you see someone crouch down while your hand's on the trigger. It's reasonable to believe that it went off. And the fact that then once it went off for that second time, that he didn't follow up with any additional shots at Mr. White or made sure that the ground was disturbed when he fired the shot, so it's clear that he saw that it didn't actually hit Mr. White. He didn't continue shooting at Mr. White. But counsel, your argument is inconsistent. I mean, you talk about the fact that, first of all, your client got out. I mean, he hit the guy the first time with the gun. He was hit the first time, the victim. And your client gets out of the car, and you want to frame it as the gun went off, but at the same time, you're saying that he was, I don't know, scared of the fact that he all of a sudden saw the decedent. It sounds like he's making a choice, to me, to fire again, maybe for his own safety, as you might argue, but it doesn't sound like there's anything accidental or that it just went off. And just to clarify, I do have two different arguments within the opening brief. The first is that this was an accidental discharge. The second was that he intended to shoot, but he, as an alternative argument, that he intended to shoot, but he did so without aiming or with any ball or elsewhere. I couldn't understand what you said was your alternative argument. You kind of, I lost you there. Sorry. The first argument, as I've been arguing, is that this was a non-intentional discharge. The second is that, as an alternative argument, that he did intend to fire the weapon when it struck and killed Mr. White, but that he didn't aim or really intend to actually harm Mr. White. Instead, he was just firing with the window without thought or care. And I think that even just to further address your point of getting out the vehicle and going towards the back and firing again, that even if, in that second instance, he did have an intentional discharge, that wouldn't necessarily mean that the first one was intentional as well. He could have a different mindset between the two different acts. But there's no evidence here that this gun malfunctioned or somehow would just go off? There was no other evidence about the gun besides that it lacked a safety in that Mr. Freeman got rid of it when he panicked and fled. I also want to briefly address the state's first-degree murder theory, the theory being that Freeman murdered White due to his failure to repay him $225, which is not consistent with the evidence. And I think that's important because it demonstrates that there was no clear motive for Freeman to plan to intentionally or knowingly discharge a firearm when he went into that situation. It's undisputed that White was found with cash far exceeding that $225 obligation. And he had indicated in the text messages that he had wanted to – the text messages both from Mr. Freeman himself and from Ms. Bailey, his paramour, to Mr. Freeman, that he had something for him and was going to repay that obligation. And so lacking a clear motive to harm White, that just further corroborates Freeman's testimony that this discharge was merely a reflex in these heightened circumstances. If there are no further questions from the court, then Mr. Freeman asked first if this has explained in the brief. And then in the alternative, Mr. Freeman requests that the circuit court remand for a new trial where the properly selected jury is instructed on second-degree murder, self-defense, and involuntary manslaughter. Thank you for your time. Thank you, counsel. Appellee, you may proceed. May it please the court, counsel. Good morning, your honors. My name is John Zimmerman. I'm an assistant appellate prosecutor from the Fourth District here on behalf of the state. In short, the state's position is that no errors occurred below. The state proved beyond a reasonable doubt that the defendant did not act in self-defense. The defendant was not entitled to an involuntary manslaughter instruction, and the jury was properly admonished. As a result, the state is ultimately requesting this court to affirm the trial court's judgment. Although opposing counsel focused on the second argument initially, I will just briefly go over the first because they somewhat overlap based on the way that I have prepared them. Regarding the first argument, the state's position, as previously stated, is it proved beyond a reasonable doubt that defendant did not act in self-defense. Defendant argues the state failed to disprove any element of self-defense beyond a reasonable doubt, and the state disagrees. Here, the state's evidence consisted of 16 witnesses ranging from numerous police officers, detectives, a doctor who was also the medical expert, defendant's fiance, defendant's fiance's son, and the victim's girlfriend, who had a very close, potentially romantic relationship with defendant based on a text message regarding rubbing her down with baby lotion or some type of lubricant. The state also introduced over 30 exhibits, including a video, pictures of the crime scene, pictures of the deceased victim, text messages, and other phone records. In short, this was a very large amount of evidence, and the state did a great job of proving that defendant did not act in self-defense. Most importantly, in this case, as your honors have correctly noted, is that defendant continually seems to downplay what occurred after the initial shot. Although the state believes defendant's point of view regarding how the initial shot occurred is somewhat unbelievable, the following is even more unbelievable and objectively unreasonable. I'll just briefly go over the testimony again. He stated he had a firearm in his vehicle to go collect the debt. He then brandished the weapon when the victim was trying to open the car door. Defendant then shot toward the victim when he was allegedly lunging through the car, but apparently didn't even mean to actually shoot the victim, even though after he fired the first shot, defendant then exited the vehicle to fire another shot at the victim. And as one of your honors noted, this individual defendant seemed to be a pretty poor shot, but that doesn't negate the intent that he had behind those shots. After these two shots, even more evidencing his consciousness of guilt regarding this crime is that he fled the scene. He destroyed evidence. He threw the weapon, a shell casing, cell phone into a river, I believe, and later threatened to intimidate one of the state's key witnesses, which was the victim's girlfriend. Again, he may have had a romantic relationship with her. This could be another potential motive why he shot the victim. Clearly, his point of view regarding these events is unbelievable or objectively reasonable, hence why the jury rejected his self-defense claim. As I stated in my brief on appeal, defendant is merely asking this court to re-evaluate evidence that the jury has already re-evaluated, and that is a role outside the purview of this court to an extent. Accordingly, the evidence in this case is not so unsatisfactory that it raises a serious doubt of defendant's guilt, and the state requests this court to affirm. In regards to the second issue, which is what opposing counsel focused on, the involuntary manslaughter instruction, the trial court did not err. This is the state's position. Again, this is a review for abuse of discretion. Here, contrary to opposing counsel's remarks, the only evidence supporting defendant's position regarding this instruction is his own testimony, and Illinois courts have clearly held this is insufficient for such an instruction. As this court stated in 2007 in Jackson, the reasoning behind this makes sense. A defendant should not be entitled to reduce his first-degree murder charge to a Class I felony by a hidden mental state known only to him and unsupported by the facts. Defendant attempts to argue the doctor's testimony regarding this entrance wound of the bullet is consistent with defendant's testimony that the victim lunged him through the window, and circumstantially, this could be argued. But again, we are on appeal, where this court should be looking at the evidence in the light most favorable to the state. And in fact, the doctor never actually testified the entrance wound was consistent with the victim launching himself through the window. On cross-examination, when defense counsel attempted to have the expert testify exactly regarding this, the expert stated, you cannot use physics to predict the tract of the wound. He stated, once the bullet hits the body, specifically a bone, I'm presuming, such as a  Further, as your honors are aware, Illinois courts have consistently held when a defendant intends to fire a gun, points it in the general direction of the victim, and shoots, which is what occurred here, such conduct is not merely reckless and does not warrant an involuntary manslaughter instruction, regardless of the defendant testifying that he didn't intend to kill anyone. Going forward, in this case, the trial court's reasoning when denying the instruction mirrors this holding. It stated, even assuming defendant's versions of the events were true, which according to law is not simply enough, the victim was about halfway into the vehicle when the first shot was fired. It would be impossible to miss him, and it wasn't an accident. He intended to shoot him, and he did. I don't think involuntary manslaughter based upon the testimony presented is an appropriate instruction. The state's position is this was not error. Another point that the state made below regarding the victim wanting to attack the defendant, why did he go around the car to the passenger side? If he really wanted to attack the defendant right away, why didn't he go to the driver's side window? Again, regarding intentionality, anyone who has ever utilized a weapon knows that if you have your finger on the trigger, you're planning to use it. So to argue that he had his finger on the trigger and just recklessly fired is somewhat disingenuous in the state's view. Defendant takes issue with the state's single sentence dismissal of Beasley and his reply brief. This is a case he relies upon, as he previously argued today. But the state was able to distinguish Bailey in a single sentence because it is entirely unlike the case at hand. In Beasley, there was conflicting yet somewhat corroborating testimony from several individuals who witnessed the shooting. Here, there was no corroborating testimony or evidence. The only other person who witnessed the shooting was shot and killed by defendant intentionally, not in self-defense. Again, this was not merely some accidental discharge, as defendant argues. He shot the victim, then made the conscious decision to exit his vehicle. He then chose to maneuver around it and intentionally shot at the victim again. Then he fled and destroyed evidence. This is not reckless conduct, and there was no need for an involuntary manslaughter instruction. As a result, the state would request this court to affirm the trial court's judgment. I will briefly go over the third issue, which is whether the trial court erred in admonishing the potential jurors. As acknowledged by defendant, he has forfeited this issue on appeal, but plain error analysis cannot save him, as no error occurred. Here, there is a 2020 Fourth District Court opinion in Kinnerson that clearly rejects defendant's argument. Even more notably, this court, the prior opinion in Wilhite, which is a Fourth District 2010 case, found no error occurred regarding the specific trial judge admonishments, the same judge in that case as the same judge in this case, that were essentially the same admonishments the trial court gave here. In Wilhite, I believe, the trial judge asked if they understood. They all said yes and then asked if they would follow instead of accept, and there was still no error. Here, he both said understood and accept separately to the different jury panels. As clearly reflected by the record in accordance with this court's precedent, no error occurred, and plain error analysis cannot save defendant. As a result, again, the state ultimately requests this court to affirm the trial court's judgment. If this court has no further questions, the state will rest on its brief for any additional arguments. Thank you, Your Honors. I see no questions. We'll hear rebuttal. Thank you, Your Honors. The first point I would like to address is the state raises that Mr. Freeman's own testimony itself is insufficient for the giving an involuntary manslaughter instruction, citing to this court's decision in People v. Jackson from 2007, but the specific language in People v. Jackson is that when the defendant intends to fire a gun, points it in the general direction of his intended victim and shoots. Such conduct is not merely reckless and does not warrant an involuntary manslaughter instruction. In the Jackson line of cases, there is an intent to fire the gun. In the facts pattern of Jackson specifically, I believe the defendant testified that he intended to shoot the gun in the direction of the victim, but he did not intend to actually kill the victim. Instead, he wanted to fire at the ground. And so in Jackson, that line of cases, there's actually an intent to discharge a weapon, and that's why then there has to be other corroborating evidence of recklessness. A second addressing the expert opinion rendered by Dr. Bowe in this case, although he didn't specify where the shot originated from, common sense at least dictates, because of the location of the bullet in the top right shoulder, that the decedent in this case was at least leaning forward to create that sort of entrance wound, regardless of where the trajectory of the bullet went. The trial court here, or excuse me, the state also raised the trial court's judgment here, citing its specific language. I think looking at its specific language, though, it does seem that the trial court is making a credibility determination. The trial court here specifically said it would be impossible for him to miss, and it wasn't an accident. He intended to shoot him, and he did. And that seems to be weighing in on Mr. Freeman's testimony and prematurely rejecting it when that should be the province of the jury. And finally, the state argued that Beasley is distinguishable. I disagree. There was very little corroborating evidence in Beasley of the defendant's testimony that he had a reaction and didn't intend to actually discharge the firearm. In Beasley, the witnesses actually differed on their opinion. If at all, the gun was trained on the decedent before discharge, and another witness opined that she was surprised that the gun was fired at someone rather than up in the air. And here I think the further corroborating evidence of recklessness, even though, as I argued before, it's not necessarily needed for the involuntary manslaughter instruction, is the positioning of the wound on white, the fact that he was only shot once, the grime on the exterior of the passenger door that was wiped off indicating that he was leaning up against the vehicle, which corroborates Mr. Freeman's testimony as a whole. And finally, the positioning of Mr. White's body halfway on the curb and into the street. If there are no further questions, then thank you. I see no questions. Thank you, counsel. We'll take this matter under advisement and await the readiness of the next case after lunch.